**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JESSICA POTTS, f/k/a JESSICA BROWN,**<br><br>Plaintiff,<br><br>v.<br><br>**SUGARHOUSE HSP GAMING, L.P., d/b/a RIVERS CASINO PHILADELPHIA,**<br><br>Defendant. | Case No.: 26-6708<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff Jessica Potts, formerly known as Jessica Brown ("Plaintiff"), by and through undersigned counsel, files this Complaint against Defendant SugarHouse HSP Gaming, L.P., doing business as Rivers Casino Philadelphia ("Defendant"), and alleges as follows:

**NATURE OF THE ACTION**

1. This action arises from Defendant's handling of Plaintiff's request for a short, finite extension of medical leave related to pregnancy, childbirth, and postpartum recovery.

2. After Defendant previously approved remote work because of Plaintiff's pregnancy-related limitations and administered her childbirth-related leave through MetLife, Plaintiff sought additional leave through approximately April 15, 2024. Plaintiff repeatedly informed Defendant that she had not been medically cleared to return and that MetLife was obtaining updated medical information.

3. Defendant acknowledged that there had been "some confusion" in communications among Defendant, MetLife, and Plaintiff. Defendant nevertheless imposed a documentation deadline shorter than the period MetLife had provided to Plaintiff's healthcare provider, threatened

termination, and ordered Plaintiff to return on April 1, 2024, before the medical-certification process was complete.

4. Defendant's conduct violated the Pregnant Workers Fairness Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Pennsylvania Human Relations Act, and the Philadelphia Fair Practices Ordinance, and ultimately constructively discharged Plaintiff.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 because those claims arise under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.; the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq.; and the Pregnant Workers Fairness Act, 42 U.S.C. §§ 2000gg et seq.

6. This Court has supplemental jurisdiction over Plaintiff's claims under the Pennsylvania Human Relations Act, 43 P.S. §§ 951 et seq., and the Philadelphia Fair Practices Ordinance, Philadelphia Code §§ 9-1100 et seq., under 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as Plaintiff's federal claims.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Defendant operates Rivers Casino Philadelphia in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Philadelphia, Pennsylvania.

8. At all relevant times, Defendant was an employer and covered entity within the meaning of Title VII, the ADA, the PWFA, the PHRA, and the PFPO.

## PARTIES

9. Plaintiff is an adult individual who resides in Camden County, New Jersey. During the events at issue, she worked for Defendant in Philadelphia, Pennsylvania under the name Jessica Brown.

10. Defendant is a limited partnership that owns and operates Rivers Casino Philadelphia at 1001 North Delaware Avenue, Philadelphia, Pennsylvania 19125.

11. At all relevant times, Defendant employed well more than fifteen employees, including well more than four employees in Pennsylvania and Philadelphia.

12. Patricia Rocco was Defendant's Vice President of Human Resources and Plaintiff's manager. Kim Burns was Defendant's Benefits and Rewards Manager. Rocco and Burns acted within the scope of their authority for Defendant concerning Plaintiff's leave, accommodation requests, return-to-work requirements, and continued employment.

## ADMINISTRATIVE EXHAUSTION

13. On July 22, 2024, Plaintiff timely filed a signed Charge of Discrimination with the United States Equal Employment Opportunity Commission, Charge No. 530-2024-08360, concerning the same pregnancy-related, disability-related, accommodation, retaliation, and separation events alleged in this Complaint.

14. The signed charge identified sex, disability, and pregnancy-related discrimination, invoked the PHRA and the PFPO, and elected dual filing with the Pennsylvania Human Relations Commission. Defendant participated in the administrative proceeding under its Rivers Casino Philadelphia trade name and submitted a position statement through counsel.

15. In or around February 2025, Plaintiff, through counsel, supplemented the same administrative charge to expressly identify claims under Title VII, the ADA, the PWFA, the PHRA, and the PFPO.

16. On June 12, 2026, the EEOC issued a Determination and Notice of Rights. Plaintiff received the notice on June 12, 2026.

17. More than one year elapsed after the filing of Plaintiff's administrative charge without a conciliation agreement, and this action is filed within ninety days after Plaintiff received the EEOC notice.

18. Plaintiff has satisfied, or has been excused from satisfying, all conditions precedent to this action.

## FACTUAL ALLEGATIONS

### Employment and Compensation

19. Defendant hired Plaintiff as Director of Human Resources for Rivers Casino Philadelphia on or around August 8, 2023.

20. Defendant agreed to pay Plaintiff a base salary of $160,000 per year. Plaintiff was also eligible for a discretionary target bonus equal to twenty-five percent of the base salary paid during the applicable bonus year.

21. Plaintiff possessed the education, experience, and skills required for the Director of Human Resources position and was qualified to perform its essential functions with reasonable accommodation.

22. Defendant selected MetLife as the administrator for employee short-term disability and accommodation-related leave matters.

23. Because Plaintiff had fewer than twelve months of service, she was not eligible for FMLA leave. Defendant's own personal-leave form instructed an employee needing time off for the employee's own medical issue, with fewer than twelve months of service, to apply for ADA leave through Defendant's administrator.

24. As Director of Human Resources, Plaintiff had firsthand knowledge of Defendant's leave practices and observed that employees who were not affected by pregnancy were afforded

administrative flexibility when leave documentation was delayed or incomplete, without comparable twenty-four-hour resignation threats.

**Pregnancy, Childbirth, and Initial Accommodation**

25. Plaintiff informed Defendant of her pregnancy in or around November 2023.

26. Plaintiff experienced pregnancy-related complications, including anemia and elevated blood pressure. Her healthcare provider submitted medical documentation identifying pregnancy-related limitations, recommending remote work, and anticipating a period of postpartum recovery.

27. Beginning on December 11, 2023, Defendant permitted Plaintiff to work remotely as an accommodation for her pregnancy-related limitations.

28. Plaintiff gave birth on December 17, 2023 and then began a medically necessary absence from work.

29. Plaintiff's healthcare provider had recommended continuous leave for postpartum recovery through March 24, 2024.

30. MetLife approved short-term disability benefits through January 27, 2024. The expiration of short-term disability benefits did not resolve Plaintiff's separate request for additional leave as a workplace accommodation.

**Request for Additional Leave**

31. On January 26, 2024, Burns sent Plaintiff Defendant's Discretionary Personal Leave of Absence Guideline Form.

32. Plaintiff completed the form and returned it to Defendant. The form identified a leave start date of January 29, 2024 and an expected return date of April 15, 2024.

33. On January 29, 2024, Burns informed Plaintiff that Defendant would not approve more than thirty days of discretionary personal leave.

34. Plaintiff was not merely seeking discretionary personal leave. She was also seeking a finite period of medically necessary leave as an accommodation for limitations related to pregnancy, childbirth, and postpartum recovery, through the process Defendant directed her to use.

35. Plaintiff promptly asked Rocco to discuss her leave. During a February 2, 2024 telephone call, Plaintiff explained that she needed additional accommodation and would contact MetLife to determine the next steps.

36. On February 19, 2024, Rocco informed Plaintiff that her available leave had expired and directed her to return on February 28, 2024 unless the matter was resolved.

37. On February 21, 2024, MetLife informed Plaintiff that it had received medical documentation supporting an accommodation through March 2024 and had contacted Defendant on January 27 and February 15, 2024 seeking Defendant's response.

38. On February 22, 2024, Plaintiff attempted to call Rocco and then emailed that she wanted to follow up concerning her ADA accommodation. Rocco responded that she had been busy and would call Plaintiff.

39. On February 26, 2024, Plaintiff informed Rocco that MetLife had said it was waiting for Defendant's response. Rocco stated that she would investigate and follow up.

**The Twenty-Four-Hour Resignation Threat**

40. On March 7, 2024, Burns emailed Plaintiff, "As we continue to review your request for leave," and asked Plaintiff to provide copies of documents that she or her provider had submitted to MetLife concerning time off after January 27, 2024.

41. Plaintiff responded on March 9, 2024, recounted what MetLife had told her about the documentation and the January 27 and February 15 communications, and asked Burns to determine whether Defendant had received anything from MetLife.

42. On March 11, 2024, Burns asked to speak with Plaintiff so Burns could explain why she was requesting the documents and what MetLife had told her.

43. Burns left Plaintiff a voicemail on March 12, 2024. Before Plaintiff had a reasonable opportunity to return that call, Defendant issued a formal twenty-four-hour notice on March 13, 2024.

44. The March 13 notice asserted that Defendant had made several attempts to contact Plaintiff and that Plaintiff had not responded. It further stated that Plaintiff had been expected to return on February 28 and that a failure to respond within twenty-four hours would be deemed Plaintiff's voluntary resignation effective March 14, 2024 at 5:00 p.m.

45. The notice was materially inaccurate and misleading because Plaintiff had been actively communicating with Defendant and MetLife concerning her accommodation request, including by email on March 9 in direct response to Burns's March 7 request.

46. Plaintiff responded in writing on March 14, 2024. She documented her communications with Defendant and MetLife, disputed the accusation that she had been unresponsive, expressed concern that Defendant was disregarding her accommodation request, requested a written response, and reiterated that she intended to return when medically cleared.

47. Rocco responded by scheduling a telephone conference with Plaintiff and Burns for March 18, 2024.

**<u>The Ongoing Medical-Certification Process</u>**

48. Plaintiff participated in the March 18, 2024 conference with Rocco and Burns and again explained that she had not been medically cleared to return.

49. In a written recap sent after the conference, Burns acknowledged that "there seems to have been some confusion with communications between Metlife, you and Rivers Casino."

50. Burns stated that Plaintiff was expected to return on March 25, 2024 unless additional medically supported documentation was submitted to MetLife. Burns further stated that Plaintiff would contact MetLife to determine whether to open a new claim or reopen the prior claim and that Burns would then follow up with MetLife to seek expedited processing.

51. Plaintiff immediately contacted MetLife. A MetLife representative told her that the representative was unsure whether Plaintiff should open a new ADA claim or update the existing claim and that the matter would be escalated to Plaintiff's case manager.

52. When the case manager did not call within the promised twenty-four hours, Plaintiff notified Rocco and Burns on March 19, 2024, asked Burns to escalate the matter with MetLife's account manager, stated that she wanted to avoid delay, and again stated that she looked forward to returning when medically cleared.

53. On March 20, 2024, Burns relayed that MetLife's account manager believed Plaintiff needed updated medical information supporting an extension of her short-term disability claim and that, if the claim were denied, possible ADA options could be discussed depending on the medical information provided.

54. Also on March 20, 2024, Plaintiff's MetLife case manager told Plaintiff that MetLife would fax the necessary forms to Plaintiff's healthcare provider and that the provider would have ten business days to return the completed forms.

55. On March 21, 2024, Plaintiff informed Burns that MetLife was faxing the forms to her healthcare provider and that Plaintiff had asked the provider to watch for and return them as soon as possible.

56. Burns responded, "If you have any problems with MetLife, please let me know."

57. Defendant therefore knew that MetLife had just initiated an updated medical-certification process, that Plaintiff was cooperating with that process, and that the provider had been given ten business days to respond.

**The Accelerated Deadline and Constructive Discharge**

58. On March 24, 2024, only three calendar days after Plaintiff reported that MetLife had sent the forms to her provider, Burns stated that Defendant had not received supporting documentation and required the documentation to be submitted to MetLife by March 27, 2024. Burns warned that Plaintiff would otherwise be required to return on March 28 and that failure to do so could result in termination.

59. Defendant's March 27 deadline expired before the ten-business-day period that MetLife had provided to Plaintiff's healthcare provider.

60. On March 25, 2024, Plaintiff promptly objected that Defendant's deadline had not been discussed during the prior conference, differed from MetLife's instructions, and did not give her provider the ten business days MetLife had allowed. Plaintiff asked Defendant to explain why it was imposing the shortened deadline.

61. On March 27, 2024, Rocco responded, "At this point I am not sure that 10 days is the issue." Rocco accused Plaintiff of having been on unapproved leave for more than a month and directed her to return by Monday, April 1, 2024 if documentation was not provided by Defendant's deadline.

62. Defendant did not provide interim leave through the completion of MetLife's stated documentation period, identify another effective accommodation, or explain how the brief requested extension would impose an undue hardship.

63. A short extension through approximately April 15, 2024, or at least through completion of the medical-certification process already underway, was finite and reasonable under the circumstances.

64. By imposing the April 1 return directive and accompanying termination threat while Plaintiff's accommodation request remained under review, Defendant effectively denied the requested accommodation and subjected Plaintiff to materially adverse terms and conditions of employment.

65. Plaintiff continued to report that she had not been medically cleared to return. Defendant left her with no reasonable option other than returning before medical clearance or risking the loss of her employment.

66. On April 1, 2024, Plaintiff resigned due to health reasons. Rocco accepted the resignation that same day.

67. Under the circumstances, Defendant's escalating resignation and termination threats, materially inaccurate accusation of nonresponsiveness, accelerated documentation deadline, and return-to-work ultimatum made Plaintiff's working conditions so intolerable that a reasonable person in her position would have felt compelled to resign.

68. Plaintiff's resignation therefore constituted a constructive discharge.

69. Defendant took these actions because of Plaintiff's pregnancy, childbirth, related medical limitations, disability, requests for accommodation, use of accommodation-related leave, and opposition to Defendant's handling of her rights.

70. Granting the requested finite extension would not have imposed an undue hardship on Defendant.

**Damages and Mitigation**

71. Following her constructive discharge, Plaintiff diligently sought replacement employment but remained unemployed until November 20, 2024.

72. On November 20, 2024, Plaintiff began replacement employment at a base salary of $115,000 with a nine-percent target bonus, materially below the compensation Defendant had paid and offered her.

73. Plaintiff later obtained an increase to a base salary of $123,000 with the same nine-percent target bonus, but she continues to suffer an ongoing compensation deficit compared with her position at Rivers Casino Philadelphia.

74. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost wages, lost bonuses, lost benefits, diminished earning capacity, emotional distress, inconvenience, humiliation, financial hardship, and other compensable harm.

**COUNT 1**
**Pregnant Workers Fairness Act: Failure to Accommodate**
**42 U.S.C. § 2000gg-1(1)**

75. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

76. Plaintiff had known physical limitations related to, affected by, and arising out of pregnancy, childbirth, and related medical conditions, including pregnancy complications and the need for postpartum recovery.

77. Plaintiff communicated those limitations and her need for a finite period of additional leave to Defendant through Rocco, Burns, and the process Defendant directed her to use with MetLife.

78. Plaintiff was a qualified employee under the PWFA because her inability to work was temporary and she reasonably expected to resume the essential functions of her position after the requested finite leave.

79. A short extension of leave through approximately April 15, 2024, or through completion of the pending medical-certification process, was a reasonable accommodation and would not have imposed an undue hardship on Defendant.

80. Defendant violated 42 U.S.C. § 2000gg-1(1) by failing to provide the reasonable accommodation and by prematurely ending the accommodation process while requiring Plaintiff to return before the process was complete.

81. Defendant's violation caused Plaintiff the damages described above.

**COUNT 2**
**Pregnant Workers Fairness Act: Adverse Action and Retaliation**
**42 U.S.C. §§ 2000gg-1(5), 2000gg-2(f)**

82. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

83. Plaintiff requested and sought to use reasonable accommodations for known limitations related to pregnancy, childbirth, and related medical conditions. She also opposed

Defendant's threatened treatment of her as having resigned and its disregard of her pending accommodation request.

84. Defendant subjected Plaintiff to adverse action because she requested and sought to use those accommodations, including by issuing the twenty-four-hour resignation threat, imposing accelerated documentation and return-to-work deadlines, threatening termination, and creating conditions that constructively discharged her.

85. The close temporal relationship between Plaintiff's requests and objections and Defendant's escalating threats and deadlines supports a causal connection.

86. Defendant violated 42 U.S.C. §§ 2000gg-1(5) and 2000gg-2(f).

87. Defendant acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to all remedies permitted by law.

## COUNT 3
## Americans with Disabilities Act: Disability Discrimination and Failure to Accommodate
## 42 U.S.C. § 12112

88. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

89. Plaintiff's pregnancy-related anemia, elevated blood pressure, and associated postpartum impairments substantially limited one or more major life activities and major bodily functions, including circulatory, cardiovascular, and reproductive functions. Plaintiff also had a record of those impairments.

90. Plaintiff was otherwise qualified to perform the essential functions of her position with the reasonable accommodation of a finite period of additional leave.

91. Defendant knew of Plaintiff's impairments and limitations through Plaintiff's communications, the medical documentation provided through MetLife, Defendant's prior remote-work accommodation, and the ongoing leave process.

92. Plaintiff requested a reasonable accommodation, and Defendant failed to provide it, failed to complete a good-faith interactive process, and subjected Plaintiff to materially adverse treatment because of her disability and need for accommodation.

93. Defendant's actions effectively denied the accommodation and constructively discharged Plaintiff in violation of the ADA.

94. Defendant's violation caused Plaintiff the damages described above.

**COUNT 4**
**Americans with Disabilities Act: Retaliation**
**42 U.S.C. § 12203**

95. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

96. Plaintiff engaged in protected activity by requesting disability-related accommodations and by objecting in writing to Defendant's threatened treatment of her as having resigned while her accommodation request remained pending.

97. Defendant subjected Plaintiff to materially adverse action, including accelerated deadlines, return-to-work and termination threats, and constructive discharge, because of her protected activity.

98. The temporal proximity and sequence of events support a causal connection between Plaintiff's protected activity and Defendant's adverse actions.

99. Defendant violated 42 U.S.C. § 12203 and caused Plaintiff the damages described above.

100. Defendant acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to all remedies permitted by law.

**COUNT 5**
**Title VII and the Pregnancy Discrimination Act: Sex and Pregnancy Discrimination**
**42 U.S.C. §§ 2000e-2(a), 2000e(k)**

101. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

102. Plaintiff is a woman who was affected by pregnancy, childbirth, and related medical conditions and was protected from sex and pregnancy discrimination under Title VII and the Pregnancy Discrimination Act.

103. Plaintiff was qualified for her position and sought a finite period of leave because of pregnancy, childbirth, and related medical conditions.

104. Defendant applied its leave-administration requirements, deadlines, and threatened employment consequences less favorably to Plaintiff than it applied comparable administrative requirements to employees who were not affected by pregnancy.

105. Defendant subjected Plaintiff to adverse terms and conditions of employment and constructively discharged her because of sex, pregnancy, childbirth, and related medical conditions.

106. Defendant violated 42 U.S.C. §§ 2000e-2(a) and 2000e(k), causing Plaintiff the damages described above.

107. Defendant acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to all remedies permitted by law.

**COUNT 6**
**Pennsylvania Human Relations Act: Sex and Disability Discrimination and Failure to Accommodate**
**43 P.S. § 955(a)**

108. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

109. Plaintiff was protected under the PHRA because of her sex, pregnancy, and non-job-related handicap or disability.

110. Plaintiff was qualified for her position and requested the reasonable accommodation of a finite period of additional leave.

111. Defendant failed to reasonably accommodate Plaintiff, subjected her to less favorable terms and conditions of employment because of sex, pregnancy, and disability, and constructively discharged her.

112. Defendant violated 43 P.S. § 955(a) and caused Plaintiff the damages described above.

**COUNT 7**
**Pennsylvania Human Relations Act: Retaliation**
**43 P.S. § 955(d)**

113. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

114. Plaintiff engaged in activity protected by the PHRA when she requested disability-related accommodation and opposed Defendant's threatened treatment of her as having resigned while her accommodation request remained pending.

115. Defendant subjected Plaintiff to accelerated deadlines, return-to-work and termination threats, and constructive discharge because of her protected activity.

116. Defendant violated 43 P.S. § 955(d) and caused Plaintiff the damages described above.

**COUNT 8**
**Philadelphia Fair Practices Ordinance: Pregnancy Accommodation, Discrimination, and Retaliation**
**Philadelphia Code §§ 9-1103, 9-1128**

117. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

118. The PFPO prohibits discrimination based on sex, pregnancy, childbirth, related medical conditions, and disability, prohibits retaliation for exercising rights under the ordinance, and requires reasonable accommodation for pregnancy- and childbirth-related needs, including leave for a period of disability arising from childbirth.

119. Plaintiff requested a finite and reasonable period of leave related to pregnancy, childbirth, postpartum recovery, and disability. The requested accommodation would not have imposed an undue hardship on Defendant.

120. Defendant failed to provide the requested reasonable accommodation, subjected Plaintiff to adverse terms and conditions because of her protected status and accommodation request, retaliated against her for asserting her rights, and constructively discharged her.

121. Defendant violated Philadelphia Code §§ 9-1103(1)(a), 9-1103(1)(g), 9-1103(1)(l), and 9-1128, causing Plaintiff the damages described above.

**PRAYER FOR RELIEF**

122. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant and award all relief available under the applicable statutes and ordinance, including back pay, lost bonuses and benefits, front pay or reinstatement, compensatory damages, punitive damages where permitted by law, declaratory and injunctive relief, prejudgment and post-judgment interest, reasonable attorneys' fees and costs, and any other legal or equitable relief the Court deems just and proper.

**JURY DEMAND**

123. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
*/s/ David M. Manes*

David M. Manes, Esq.
PA ID No. 314661
Partner
**SANFORD DEROSE TRIAL LAWYERS, LLP**
810 Penn Ave, Suite 200
Pittsburgh, PA 15222
(412) 593-4001 Direct
dmanes@usebulldog.com
*Counsel for Plaintiff*